```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------- x
FRANK VANDEVER,                 :
                                :
         Plaintiff,             :
                                :
v.                              :
                                :
LIEUTENANT PLUSZYNSKI, in his   :  Civil No. 3:15-cv-928(AWT)
individual and official         :
capacities; CAPTAIN ROBERT JUDD,:
in his individual and official  :
capacities; and COMMISSIONER    :
JAMES DZURENDA, in his          :
individual and official         :
capacities,                     :
                                :
         Defendants.            :
------------------------------- X
```

## MEMORANDUM OPINION

The plaintiff, Frank Vandever ("Vandever"), was at all times relevant to this action incarcerated at Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut ("Corrigan"). He brought an action pursuant to 42 U.S.C. § 1983 against defendants Lieutenant Martin Pluszynski ("Pluszynski"), Captain Robert Judd ("Judd"), and Commissioner James Dzurenda ("Dzurenda"). The complaint set forth claims that the defendants retaliated against the plaintiff, in violation of his First Amendment rights, for pursuing lawsuits against the Department of Correction or its employees by placing him on High Security status, and also that in connection with placing him on High Security status, the defendants violated his right to equal

1

protection under the law and his right to procedural due process. The court dismissed the equal protection claim in the initial review order (ECF No. 7) and allowed the plaintiff to proceed with the First Amendment retaliation claim and the Fourteenth Amendment procedural due process claim against all the defendants in their individual capacities and against all the defendants in their official capacities to the extent the plaintiff sought declaratory relief. During closing arguments, the plaintiff represented that the First Amendment retaliation claim is against defendant Dzurenda only.

For the reasons set forth below, after a bench trial, the court finds for the defendants on both of the plaintiff's remaining claims.

I. **FACTS**

On July 30, 1990, Vandever was sentenced to a term of life imprisonment, suspended after 40 years, having been convicted of murder. At the time he was sentenced, Vandever had been detained in various Department of Correction facilities since January 1989. In April 1990, while Vandever was at New Haven Community Correctional Center, he was put on Administrative Segregation status after being charged with, among other violations, attempted escape. In May 1990, while Vandever was at Montville Correctional Facility, the disciplinary committee found him

guilty of attempted escape. Then, on December 31, 1991, Vandever and another inmate actually escaped from the maximum security prison in Somers. This was a high-profile incident because there had ever been only one other escape from a Connecticut Department of Correction maximum security prison. When he was finally apprehended, Vandever was charged in Connecticut with kidnapping, robbery, and burglary while a fugitive, and also charged with a series of armed robberies in New Jersey, also committed while he was a fugitive. Vandever was returned to the custody of the Department of Correction on January 22, 1992 and placed on High Security status.

In November 1997, there was a hearing held with respect to Vandever being on High Security status. In the Restrictive Status Report of Hearing for Placement or Removal, the hearing officer recommended that Vandever should:

> Remain on High Security with special security and population management considerations. Inmate Vandever was found guilty of a Contraband Class A DR—possession of escape related contraband, specifically a 12-page NIJ article on prison perimeter security. Inmate Vandever, until physically incapable, will always present a High Security risk for escape due to his length of sentence and his serious institutional escape hx. . . .

Defendants' Trial Exhibit ("Defs.' Trial Ex.") 3, at page 2. The Inmate Classification Administrator agreed that Vandever should remain on High Security status and gave as the reason:

"Possession of escape related contraband and prior escape and attempts." Id.

In February 2008, Lieutenant Edward Corl filed an incident report concerning Vandever. The incident report recited that another inmate, who had a job on the trash run, had reported that Vandever asked the other inmate to let him go with him on the trash run, and the other inmate refused because he did not want to be found guilty if Vandever were to escape. In March 2008, there was a hearing to determine whether Vandever should be placed on Administrative Segregation status. In the Restrictive Status Report Hearing for Placement or Removal, the Director of Offender Classification and Population Management ("OCPM") concluded that the information provided did not support putting Vandever on Administrative Segregation status, and also concluded, "Manage at level 4 on H/S, warn offender of future behavior." Plaintiff's Trial Exhibit ("Pl.'s Trial Ex.") 8. Thus, it was the view of the Director of OCPM in March 2008 that Vandever should be on High Security status.

On January 6, 2009, Michael P. Lajoie, the then-Director of Security for the Department of Correction, responded to a letter he had received from Vandever in which Vandever sought to be removed from High Security status. Lajoie informed Vandever that after discussing Vandever with others, Lajoie had concluded that Vandever would remain on High Security status, but authorized

four special visits each year in which contact with Vandever's family would be allowed. Lajoie also informed Vandever that "[his] High Security status will continue to be reviewed on a regular basis in accordance with Administrative Directive 9.4." Pl. Trial Ex. 4a. On June 15, 2009, Lajoie wrote to Vandever again and encouraged Vandever to "continue to display a positive attitude" and stated "perhaps we could consider the next level or removal of High Security." Pl. Trial Ex. 4b.

At some point prior to August 12, 2010, Scott Erfe ("Erfe"), the warden at Corrigan, wrote to Lynn Milling ("Milling") who was at that time the Director of OCPM, recommending that Vandever be removed from High Security status. On August 12, 2010, Milling responded to Erfe, writing:

> Please be advised that this office does not concur with your recommendation concerning the above named inmate, regarding his removal from High Security [s]tatus. Inmate Vandever is to remain on High Security status at this time.

Defs. Trial Ex. 1. A copy of the letter went to the "OCPM File." Id. Kathryn Dudley, who was a supervisor in OCPM in August 2010, testified that if OCPM recommended that an inmate remain on High Security status, that inmate remained in High Security status at the OCPM unit.

On August 11, 2010, Lajoie, who had by then become the District Administrator for the North District, wrote to Vandever in response to a letter from Vandever dated July 20, 2010. In

5

that letter, Vandever had requested removal from High Security status. Lajoie advised Vandever:

> Per Directive, I cannot make the decision to remove your High Security status. Therefore, by copy of this letter, I will forward your request to Warden Erfe for his review.

Pl. Trial Ex. 4c.

Then, on August 18, 2010, Warden Erfe wrote to District Administrator Lajoie recommending that Vandever be removed from High Security status:

> On July 29, 2010, the review committee met with inmate Vandever and has recommended that his High Security [s]tatus be removed while he is here at CRCC and he be placed on Special Monitoring Status. If and when inmate Vandever transfers from CRCC to another facility his High Security [s]tatus will be reinstated . . . For the aforementioned reasons, the review commit[tee] recommends consideration for removal of High Security [s]tatus and placement on Special Monitoring."

Pl. Trial. Ex. 4d.

On August 24, 2010, Lajoie wrote "Approved" on the bottom of the August 18, 2010 letter from Warden Erfe. See id. That letter also contains a notation "CC: D/C Dzurenda," which is understood to mean that a copy was sent to defendant Dzurenda in his capacity as Deputy Commissioner, which was his position at that time. However, Dzurenda never saw that letter until after this lawsuit was filed and has no recollection of the plaintiff ever being on any status other than High Security status.

A copy of the letter containing these two notations was received by Warden Erfe's office on August 24, 2010. Warden Erfe relied on this document to order his subordinates to take Vandever off High Security status, despite having been informed that OCPM did not concur with Erfe's recommendation.

When an inmate is placed on High Security status, there are restrictions with respect to housing. Section 14.E provides that "[a]n inmate placed on High Security Monitoring shall be housed in a secured call. The inmate shall be moved to a new cell at a minimum of every 90 days." Administrative Directive 9.4, Pl. Trial Ex. 9c, at 11. In addition, Section 14.G sets forth certain procedures with respect to management of inmates who are on High Security status:

> <u>Management of High Security Inmates</u>. A high security inmate shall be managed in accordance with general population standards with the following exceptions:
> 1. escorted or monitored movement only;
> 2. cell searches, at a minimum of two (2) times a week;
> 3. in unit work assignments only;
> 4. in unit or monitored programs;
> 5. non-contact social visits only;
> 6. mail retention, same as general population and automatic mail review; and
> 7. telephone, same as general population and automatic call review.

<u>Id.</u>

Section 14.H of Administrative Directive 9.4 also contains a requirement for periodic review of the status of each inmate who is on High Security status:

7

> Review. The status of each inmate placed on High Security Monitoring shall be reviewed, at a minimum, every six (6) months. The review shall be in conjunction with a classification review. Recommendation for removal shall be made to the Unit Administrator who may endorse the recommendation and forward it to Director of Offender Classification and Population Management.

Id., at 11-12. The "Unit Administrator" is the warden at the facility where an inmate is being housed. So here, the United Administrator for Vandever was Warden Erfe.

Section 14.I of Administrative Directive 9.4 states the procedure for removing an inmate from High Security status:

> Removal from High Security Monitoring. The Unit Administrator, in consultation with the Director of Security, shall forward recommendations for removal to the Director of Offender Classification and Population Management, who may consider removal of an inmate from High Security Monitoring, if one (1) or more of the following criteria becomes applicable:
>
> 1. the inmate's physical condition changes enough to significantly reduce or no longer pose a threat of escape;
> 2. relevant, valid and documented new information that exculpates the inmate or contradicts the initial information used for placement;
> 3. the belief that an inmate may no longer present[] a high-risk due to length of time served or changes in circumstances originally used to classify the inmate as a high security inmate; or
> 4. the passage of an extended period of exemplary institutional performance.

Id., at 12.

In response to Warden Erfe's order to remove Vandever from High Security status, his subordinates removed the High Security subcode in the computer with respect to Vandever. The

8

consequence of the High Security subcode being removed in the computer was that if Vandever travelled to a courthouse for a case, the marshalls or other court security officers who were admitting him to the courthouse would not find a High Security designation for him when they checked the computer.

Warden Erfe understood that Lajoie, as District Administrator, had authority over a group of wardens but did not have the authority to remove Vandever's High Security status. Erfe understood that such removal had to be done in accordance with Section 14 of Administrative Directive 9.4. However, he nonetheless acted on the "approval" from District Administrator Lajoie even though the Director of OCPM, Milling, had stated in writing to him approximately three weeks earlier that Vandever was to remain on High Security status. Erfe testified that he did so because he believed that Milling could not give him an order because she was not in his chain of command and that he was doing what his boss, District Administrator Lajoie, had instructed him to do.

In 2009, Vandever sued a number of Department of Correction employees: Warden Peter Murphy, District Administrator Mark Strange, Major Carol Chapdelaine, Captain Gino Beaudry, Lieutenant Ed Corl, Lieutenant Thomas Allen, and Captain Vanoudenhove. After the court's initial review order and a ruling on the defendants' motion to dismiss, the remaining

claims were a First Amendment retaliation claim against defendants Murphy and Strange, and the equal protection and due process claims against all of the defendants. In December 2012, the parties in that case were ordered to submit their joint trial memorandum. The defendants in that case filed their joint trial memorandum in March 2013 and in April 2013 were awaiting a trial date.

In April 2013, Vandever was also pursuing a second lawsuit against the Department of Correction, Vandever v. Comm'r of Corr., TSR-CV-04-0004464-S (Conn. Super.). This action was a petition of a writ of habeus corpus filed by Vandever in December 2003, challenging his placement in Administrative Segregation. The Superior Court denied his petition and, in May 2012, the Connecticut Appellate Court dismissed his appeal. In April 2013, Vandever had an appeal pending with the Connecticut Supreme Court. See Vandever v. Comm'r of Corr., 315 Conn. 231 (2014).

Around April 30, 2013, Dzurenda became aware of the fact that Vandever was not being managed as if he were on High Security status and that the steps taken to change how Vandever was managed at Corrigan had never been authorized in accordance with Administrative Directive 9.4. It was Dzurenda's understanding that the High Security subcode had been inadvertently removed. Karl Lewis was then serving as the

10

Director of OCPM, and Dzurenda informed one of Lewis's subordinates about the situation. Lewis was then made aware of the fact that Vandever was not being properly managed and ordered that Vandever be managed as an inmate on High Security status. It is unclear whether Dzurenda or Lewis contacted Warden Erfe at Corrigan, but in any event, prior to the regular management meeting at Corrigan on the morning of April 30, 2013, Erfe had been instructed that Vandever had to be managed like other inmates on High Security status. At the conclusion of that meeting, Warden Erfe ordered Lieutenant Pluszynski to ensure that Vandever was on High Security status.

The log book at Corrigan reflects that by 6:25 p.m. on April 30, 2013, Lieutenant Pluszynski had verbally notified Vandever that he was on High Security status and to be managed like an inmate on High Security status. On May 1, 2013, Lewis, the Director of OCPM, wrote a letter to Warden Erfe stating:

> Please be advised that this office concurs with Commissioner Dzurenda's recommendation concerning the above named inmate's placement on High Security Status. Please hold a Classification Hearing to inform him of this designation. Also, please initiate a new inmate classification form utilizing the RI transaction and enter the High Security Subcode, HS.

Pl. Trial Ex. 4f. Lewis testified that the letter was sent to confirm Vandever's High Security status.

On May 2, 2013, Pluszynski gave Vandever a form notifying him that he had been placed on High Security status. The form

11

was entitled "Restrictive Status Notification of Decision" and dated May 2, 2013. The form advised Vandever: "You may appeal this decision within 15 days of the receipt of this notification in accordance with Administrative Directive 9.6, Inmate Administrative Remedies." Pl. Trial Ex. 7a. Vandever signed the form under protest. The procedure followed by Pluszynski in giving Vandever notification that he was on High Security status was different from the procedure Pluszynski had followed when he placed other inmates on High Security status. In the other instances where Pluszynski had been involved in the placement of an inmate on High Security status, the procedures in Administrative Directive 9.4 for an initial placement of an inmate on High Security status had been followed.

Captain Judd took over as the security coordinator at Corrigan in August or September 2013. He had had nothing to do with the events that took place from April 30, 2013 through May 2, 2013 with respect to Vandever being managed like an inmate on High Security status. However, Judd was involved in a number of subsequent High Security reviews for Vandever in 2013 and 2014. On October 29, 2013, Judd conducted a High Security review for Vandever, together with Counselor Supervisor Zegarzewski. The report on the review reflected that the review committee recommended that Vandever remain on High Security status until his next review, which was scheduled for April 29, 2014. The

report stated: "This placement is based on the fact [that] Inmate Vandever has successfully escaped from a [Department of Correction] facility as well as being found in possession material detailing electronic perimeter technology." Pl. Trial Ex. 12. Zegarzewski had also participated in a meeting with Vandever after Lewis's May 1, 2013 letter was received, to discuss Vandever's status. Zegarzewski testified that he understood that Vandever's status was being corrected (not changed) by adding the High Security subcode.

Vandever's next review date was April 30, 2014. Judd was also involved in that review. The review committee again recommended that Vandever remain on High Security status until his next review. The report references Vandever's successful escape as well as him being found in possession of material that contained information about electronic perimeter technology.

Vandever's next review date was September 18, 2014. Again, Judd was involved. Again, the review committee recommended that Vandever remain on High Security status. There was again a reference to his successful escape and his possession of material that contained information about electronic perimeter technology.

Soon thereafter, Judd was directed by Warden Erfe to prepare a letter for Erfe's signature, dated September 29, 2014 and requesting that Vandever be removed from High Security

13

status. The letter stated that Vandever had "displayed exemplary behavior and has displayed no signs that he is a risk to the safety and security of the facility." Defs. Trial Ex. 6. It also stated that Vandever met the criteria for removal from High Security status set forth in clauses 3 and 4 of Section 14.I of Administrative Directive 9.4. Judd testified that although he drafted the letter at Erfe's direction, he did not agree that Vandever should be removed from High Security status. Warden Erfe's request in his September 29, 2014 letter was denied on October 28, 2014.

## II. DISCUSSION

Vandever claims that defendant Dzurenda retaliated against him in violation of his First Amendment rights, by ordering that he be put on High Security status in retaliation for Vandever's pursuing two lawsuits against the Department of Correction or its employees. Vandever further claims that defendants Dzurenda, Pluszynski, and Judd violated his Fourteenth Amendment right to procedural due process because of the process used with respect to his High Security status in April and May 2013.

### A. First Amendment Retaliation Claim

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that (1) that the speech or conduct

at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and citations omitted). "[R]etaliation against a prisoner for pursuing a grievance violates the [First Amendment] right to petition government for the redress of grievances guaranteed by the First Amendment . . . ." Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). "The right to petition government for redress of grievances—in both judicial and administrative forums—is 'among the most precious of the liberties safeguarded by the Bill of Rights.'" Id. (quoting United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967)).

Here, Vandever has proven that on April 30, 2013 he was pursuing two cases against the Department of Correction or its employees when Dzurenda directed that Vandever be managed like an inmate on High Security status. Thus, the plaintiff has established the first element of this claim.

However, the plaintiff has established neither that Dzurenda took adverse action against him, nor that there was a causal connection between his protected conduct and Dzurenda directing that Vandever be managed like an inmate on High Security status.

Although the High Security subcode was removed in the computer with respect to Vandever by Warden Erfe's subordinates at Corrigan, at the direction of Warden Erfe, Vandever was in fact never taken off High Security status. Under Administrative Directive 9.4, only the Director of OCPM had the authority to remove an inmate from High Security status. The role of the Unit Administrator, i.e. the warden, was to consult with the Director of Security and forward a recommendation to the Director of OCPM.

Here, not only did the Director of OCPM not act to remove Vandever from High Security status, but she also made it clear that he was in fact to remain on High Security status, and a copy of Milling's August 12, 2010 letter went to the "OCPM File." The OCPM unit understood that Vandever's High Security status did not change in August 2010. Simply put, Vandever went in August 2010 from being managed like an inmate on High Security status, to being managed like an inmate who was not on High Security status. Then on April 30, 2013, he went from being managed like an inmate who was not on High Security status to being managed like an inmate who was on High Security status. That is not the same as being put back on High Security status after not being on that status during the preceding two-plus years.

Vandever suggests that the fact that the copy of Warden Erfe's August 18, 2010 letter that was returned to Erfe with the notation that Erfe's recommendation had been approved by District Administrator Lajoie also reflected that a copy had been sent to then-Deputy Commissioner Dzurenda shows that Dzurenda must have approved his removal from High Security status. Vandever established that Section 5 of Administrative Directive 9.2 (Offender Classification) does override Section 14 of Administrative Directive 9.4. Section 5 of Administrative Directive 9.4 provides that a Deputy Commissioner or the Commissioner can intervene in any classification decision at any time. However, Dzurenda never saw any version of Warden Erfe's August 18, 2010 letter until this litigation and understood that Vandever was on High Security status at all times. Thus, the court concludes that Dzurenda never intervened in any classification decision with respect to Vandever in August 2010.

Consequently, although Vandever was being managed at Corrigan as if he were not on High Security status as a result of the fact that Warden Erfe believed that it was not appropriate that he be in that status, Vandever continued to be on High Security status pursuant to all of the procedures for determining whether he was on High Security status or had been taken off of that status. Warden Erfe appears to have recognized this fact because, in his August 18, 2010 letter, he states

17

that, if Vandever transferred from Corrigan to another facility, Vandever's High Security status "will be reinstated."

Therefore, because Vandever was in fact at all relevant times on High Security status, Dzurenda's instruction that he be managed as an inmate on High Security status was not an adverse action.

Nor has Vandever established a causal connection between his protected conduct and Dzurenda's directive that he be managed as an inmate on High Security status. Vandever testified at trial that the only reason he could think of for Dzurenda's action was the fact that Vandever was pursuing the two lawsuits. However, there is no evidence that Dzurenda knew about either of the lawsuits, and the evidence demonstrates that the vast majority of the people at the Department of Correction who were familiar with Vandever were firmly convinced that he should be on High Security status.

Thus, Vandever has failed to prove this claim by a preponderance of the evidence.

### B. Procedural Due Process Claim

"[T]o present a [Section 1983] due process claim, a plaintiff must establish (1) that he possessed a liberty interest, and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky,

238 F.3d 223, 225 (2d Cir. 2001) (citations omitted). "To determine whether a liberty interest exists under state law, the court must analyze whether the restraint at issue 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' Sandin v. Conner, 515 U.S. 472, 484 (1995) . . . . " Id.

As discussed above, at the direction of Warden Erfe, the High Security subcode in the computer was removed with respect to Vandever by Erfe's subordinates at Corrigan and he was being managed at Corrigan as though he were not on High Security status. However, as discussed above, Vandever was never taken off High Security status. Rather, he simply was the recipient of unauthorized benefit conferred on him by Warden Erfe. Thus, no analysis is necessary as to whether Vandever possessed a liberty interest because ensuring that he was managed as an inmate on High Security status did not deprive him of anything to which he was entitled, much less an interest protectable under the Due Process Clause of the Constitution.

Thus, Vandever has failed to prove this claim by a preponderance of the evidence.

### III. CONCLUSION

Accordingly, judgment shall be entered in favor of the defendants with respect to all of the plaintiff's claims.

The Clerk shall close this case.

19

It is so ordered.

Signed this 21st day of March 2019, at Hartford, Connecticut.

> /s/ AWT
> Alvin W. Thompson
> United States District Judge